Good morning, Your Honors. What we have here is a case of a Guatemalan woman who was persecuted while in her country, and she claimed asylum. She claimed that she was persecuted and established a well-founded fear of persecution, and therefore she did not have to establish a fear of future persecution. However, even if she had not established a well-founded fear of past persecution, we believe that under both the objective and subjective test here, that it would have been found that she had a fear of future persecution. In this particular situation, she was a student at a university, and she had been attending meetings, peaceful meetings, in protest of the government, and one of her cousins had been found dead. She had been told that the cousin before he was killed, there was a note given to his wife, and that the individuals that had killed this person were driving a black car. Later, she learned that one of her other cousins, Edwin, a professor at that university, was also killed. And at one point after his death, she and her boyfriend were riding in a car. They were approached by a black car. She jumped out of the car in fear, assuming that these were the same people that had killed her cousins, and went into a ravine and heard gunshots. The result of those gunshots were that her boyfriend was severely wounded. At that point, she fled. Now, let's assume that we agree with you that the record compels the conclusion that she suffered past persecution. What do we do with the IJ's statement that even if he were to find your client eligible for relief, he would deny it in the exercise of discretion? Your Honor, I think that it still goes back to the evidence that was presented to the court, which was clear, sufficient, specific about what had happened to her. The IJ did find her credible. There wasn't an issue of her lying to the court. But still, we believe that those issues did not go to the heart of the claim. And so, you know, we would go back to what had been submitted. In fact, there was evidence that there was a well-founded fear of past persecution, despite the fact that, you know, it goes back to the IJ's statements. Well, let me put it a different way in the sense that the agency is entitled to a discretionary decision at the end of eligibility. And so even if your client's eligible, what do we do with the IJ's conclusion that because she was not completely truthful about her arrest that he would deny relief in any event? Your Honor, we believe that the IJ does have that discretion to decide on a case where there may be issues of credibility. However, in deference to my client, I would say that the issues here in terms of her truthfulness and credibility would go more towards the volunteer departure that was the IJ did not find that her testimony as to the merits of her claim were not truthful. No, that's true. I mean, she – I don't know if there was a specific credibility finding, but certainly there was a statement. There wasn't an adverse credibility finding as to the merits of the claim, no doubt about that. On the other hand, she did lie about not merely her prior arrests and not merely her mother's own entrance into the country. And her issues with her daughter, she lied about all of these different things. Does that give us more difficulty in setting aside that exercise of discretion? Your Honor, I don't think it does. I think what we have here is a situation that's very common among individuals that enter the country under those circumstances in which, you know, people will lie about things that they feel would hurt them. They don't understand that, you know, they need to speak, you know, truthfully about this particular claim and the other things may affect that. For instance, people coming to the country would lie about the fact that they work. You know, they have work – they don't have work authorization. They would do those kinds of things. And I think that what she has lied about really is on that kind of a level. And again, I think that there's a fine line here between what she lied about and maybe the veracity of statements that would affect a volunteer departure. But certainly as towards a credibility claim on asylum, I don't think this would enter into it. So essentially, I assume that what you're asking us to do is to send it back to the BIA and the agency to reconsider in light of past persecution and also to reconsider the discretionary decision. I am, Your Honor. All right. I think we have your argument at hand if you want to save some time for rebuttal. I won't pass, Your Honor. Okay. All right. Good morning. May it please the Court. Kylie Keene on behalf of the Attorney General. Would you move your microphone down just a hair? There you go. Thank you. I do wear heels. This morning, it seems that the Court is taking an interest in the discretionary denial, so maybe I'll address that first. Insofar as it was a finding of the immigration judge and the Board, I think it's important, however, because the Court has to reach the merits of the case. Well, we asked your opponent about the discretionary aspect. We may have different questions for you. Oh, okay. Well, I actually think that the crux of the case does not rely on the discretionary aspect. I really think the crux of the case is the changed country conditions in Guatemala because the incident that happened to her was in 1983. She fled in 1984. And then we have a finding from the immigration judge as affirmed by the Board that country conditions of Guatemala have significantly improved and have improved in a way that particularly impacts Ms. Martinez because there is now academic freedom, there is constitutionally protected right to assemble, and there are peaceful protests within Guatemala. And so because of those conditions that have changed with particularity to Ms. Martinez's cause, I don't know where she can continue to engage in these I find that to really be the dispositive issue in the case. And that goes to the question whether or not she had passed persecution is somewhat irrelevant. Now, the agency found she did not, and that's important for the analysis because it means that she doesn't get the presumption, and then the burden stays with her to demonstrate the well-founded fear.  And so the only thing we have in the record is this 2004 country report. Is that in and of itself enough to rebut the presumption if we were to find that the presumption applied? Absolutely, it is. And it is the only objective evidence that was submitted by either party, and it was submitted by the government. Now, a 2004 report may seem a little bit stale, but keep in mind that the IJ's  determination was in 2006, and that report is issued in 2005. So it was the current country report at the time of the IJ merits hearing. Now, we've had a little bit of lag time. You know, it took a year for the board to decide, and now this is an 07 petition for review, and it takes some time to get to where we are today. So it may seem a little bit stale. But what we're reviewing is whether at the time of the agency's decision the evidence of record, which we only have that 2004 report, would show changed contributions. Like I said, it's not just a general Guatemalan country conditions have changed in a positive way. The IJ identifies that they've changed in a positive way with respect to Ms. Martinez's claim for asylum, and they identify that the report shows that there is now academic freedom, which is what she was protesting against, and that human rights abuses have reduced with respect to activists that protest, and that there is now a constitutionally protected right to peacefully assemble, and that these protests have, in fact, happened in the country without incident or interference from the police. So in my view, that's really the dispositive issue in the case. Now, we do also have the discretionary denial of asylum here. But like I said, because the Court has to reach the merits for the withholding of removal claim, if it found that there was no well-founded fear, it doesn't even need to reach the discretionary denial. Why wouldn't it be more logical if we thought that the record compelled the conclusion that she had suffered past persecution to remand and let the Board decide in light of the actual presumption? Well, because the analysis is the only evidence of record regarding country conditions, which is what the Board would have to evaluate, is the very document the agency evaluated. So I guess I'm saying it would be, it would be, there would be nothing that the Board could add on remand that it didn't already address, because there's only that one document, and the immigration judge fully addressed that document. And where did the immigration judge address the changed country conditions? Can you point to me on the record? Sure. This is on AR44 to 47, is where the immigration judge talks about the report. It doesn't, it doesn't appear in his findings. Okay. I'm looking at page 44, the last paragraph. This is the middle of the immigration judge's decision, where she's talking about, nevertheless, the Court must determine whether the Respondent actually has a well-founded fear. It seems clear that she has subjective fear. The Court knows that there's subjective and objective components to that. Then it's, she says, in making this determination, the Court carefully reviewed the only background document on Guatemala which was submitted, and that is the country report that we're speaking of. The next three pages go on to discuss the country report and how country conditions have changed in Guatemala. And she concludes on 46, saying that the specific facts contained in this report indicate that conditions have changed very significantly since the time the Respondent fled Guatemala. But does that specifically address whether the presumption is rebutted as opposed to simply talking about the impact on a well-founded fear of persecution, that is, the question of the burden? Right. Well, but here, the document was submitted by the government. I mean, she submitted no objective evidence regarding a well-founded fear. So I can only read the immigration judge's decision to be analyzing the evidence that the government submitted regarding her objective well-founded fear. I don't think that's quite the question. The question is whether or not the IJ analyzed the country conditions in light of the presumption. No. The answer to that is no. And so our case law basically says if that occurs, you have to remand and allow the proper analysis to be conducted under the right standard. But this is the only evidence of record. Right. But we don't know what the IJ would have done in absence of a presumption. Because then there's the individualized analysis, and you've addressed that, that it discusses that. Right. But, I mean, generally speaking, and I take your point, but generally speaking, if the agency has not conducted the proper analysis under the right analytical framework, we don't engage in that analysis ourselves. We remand the agency. Right. That's right. And that's what the government usually urges us to do. We do. Well, then I guess maybe I need to address the past persecution, because what I hear you saying is if the court finds that she established past persecution, then we don't have the right analysis. And the Court is correct on that point. I mean, I've made my point that this is the only evidence of record. Yes. I take your point. But the reason that the IJ did this was not in error, because the IJ found there was no past persecution. So this is the proper analysis under the framework established by the IJ that there's no past persecution. I just want to make that clear. Yes. So then the question becomes if you find that it's past persecution, so maybe I should address that a little bit. The government's view is that regarding past persecution of her, there's the one incident, and that incident is when she was followed by the men in the blazer and her boyfriend was shot. Now, the reason that I'm saying that that's the only incident is because that's the only thing that happened in particular to her. Now, her cousins being shot and people coming to her home, talking to her mom and her aunt and these other various things that happened over the years after absolutely go to her well-founded fear, but they don't go to whether she was persecuted in the past, because those events did not happen to the applicant. Not true. But here you have pretty credible death threats that were carried out against her close associates. She gets chased. Her fiancé or boyfriend gets caught and beaten, and they say she's the one we're after. Just because she was lucky enough to escape shouldn't mean that – I mean, if she was caught and beaten, the board and the IJ would say, yes, she suffered persecution, but she was lucky enough to get into a culvert. So doesn't that fall comfortably within our case law where you have death threats? Don't have death threats. Excuse me, please. Oh, I'm sorry. Okay. At least threats of injury or at least credible death threats to her family, threat of harm to her, a credible threat of harm. Taken together, we've said that those can constitute past persecutions. I have to respectfully disagree, Your Honor, because I think the way that you The threats that go into her cousins and the things that happen to her cousin are not past persecution of her. But isn't she a member of the same group that they were members of that the evidence suggests was the reason for their being targeted? It's a small group. She's a member of that group. Her boyfriend's a member of that group, or at least is associated – or he's hurt only because he's with her. Right. Either way, doesn't it suggest that the association in that group and the fact that later people came to look for her, doesn't that also contribute to a finding that indeed she was a target of persecution? Yes. She was a target. We know that. Not a target, but a target. Right. She managed to escape, which was fortunate for her. I always find that anomaly in immigration law that if you are actually smart or you don't get relief, if you get caught and beaten, if you're slow or not as clever, then you do get relief. That's oftentimes the case. Just an observation. Yeah, the way the law is written, that is often the case. But the law does provide for taking those facts that the court is identifying. I guess what I'm trying to push back on is that those facts go to whether she has a well-founded fear. She was threatened, and that means she at that time legitimately, incredibly feared being targeted by this group. But that fear has been gone. I'm sorry to interrupt, but my point was our case law has threats plus can constitute past persecution, and we've held on a number of cases that that's the case. Why is this any different? I don't see the ---- I mean, we're talking about cases where the applicant has no injury at all, but there are threats to family or deaths of close associates coupled with some threat, whether it's death or injury, that doesn't result in injury. Because I'm pushing back a little bit on the fact that she's been threatened. She didn't receive a phone call like a lot of these other cases. There was no written note. Nobody approached her except for this incident in the ravine. And so what I'm saying is you take the sole incident in the ravine and you compare it to the sliding scale of cases where this Court has found past persecution and those where it hasn't, and the government contends that that one incident falls pretty far down on the list because there was no interrogation, no arrest, no physical harm, no threats provided to her home. No, but I think the point is, and I do want your analysis on this, is that if they hadn't said she's the one we're after, it might be a different case. But this car that's been following all the family members, relatives, they end up dead. They follow her. They jump out of the car. They say she's the one we're after. She escapes. The boyfriend is severely beaten and hospitalized. Why isn't that circumstance much like our other case law? Because of the first, the sole incidence of it. The things that you're talking about, the threats coming to the home, happen years later, right? No, no, I'm not talking about threats to another case. That's what we have there. You were talking about threats that were delivered to a home in other cases. I wasn't talking about the subsequent threats. Well, there are several cases in the Respondent's Brief where we argue it's more like these cases, less like because of the sliding scale. And in those cases, and I'm just looking at my notes here, we have things like a house being stoned and burglarized and vandalized, an alien being detained briefly and hit in the stomach and kicked and threatened and questioned. And in those cases, the court found no past persecution of the applicant. Now, here we don't have detentions or arrests or interrogations or government officials approaching her. We have these men in the car who came and said, we want that one, and she escaped. That's the incident, the sole incident that the court looks at when determining whether she personally suffered past persecution. And I know I've said this already, but that's why I'm pushing back so much on keeping these two analytical prongs under the INA distinct. Was that enough under this Court's case law, absent these other things that happen to her that go to well-founded fear, which the immigration judge actually says at the time that she fled, she absolutely had a well-founded fear of persecution, because all these other things also happen, the things that the court has identified. But as far as past persecution, under this Court's case law, the government's pushing back on that point. Kagan is your point, and then I think we'll probably have it, is your point that we should simply not consider any of the circumstances or the context that gave that existed at the time this incident in the ravine happened, that we should simply not consider what happened to her cousins at all? Well, it's appropriate to consider the context. I mean, because the black blazer is important, for instance, right? How do we – those are unidentified men. We don't know who they are. She doesn't know who they are. But we – but the immigration judge credits that testimony in saying, in the context of the fact that your cousin was killed by men in a black blazer, yeah, it makes sense that those were probably the same men or of the same organization. And so I'm not saying the context is unimportant, but I'm saying – I'm urging the court to keep distinct the principles of past persecution and those of well-founded fear, and that's my point. Judge Fletcher, do you have any questions? No. I think it's been pretty thoroughly explored. I find it difficult to think that the government does not see this as a well-founded fear of persecution at this time, and that it should go back for consideration by the board. Thank you. Thank you. We'll hear rebuttal? No rebuttal. Okay. Thank you. The case is heard. It will be submitted for decision.
judges: Rosenthal, Fletcher B. , Thomas